```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/18/20
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Alfred Castorina,

                Plaintiff,

       –v–

Andrew M. Saul, Commissioner of Social
Security,

              Defendant.

---

19-cv-991 (AJN) (BCM)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Alfred Castorina has commenced this action under the Social Security Act,

challenging the final decision of the Commissioner of Social Security denying his claim for

social security disability insurance benefits.  On December 6, 2019, the parties filed their joint

stipulation in lieu of motions for judgment on the pleadings.  Dkt. No. 22.

On August 24, 2020, the Honorable Barbara C. Moses, United States Magistrate Judge,

issued a report and recommendation ("R & R") recommending that the Court grant the

Commissioner's motion and deny Plaintiff's motion.  Dkt. No. 30.  Plaintiff timely requested an

extension of time to file his objections to the R & R, and the Court granted Plaintiff's request.

Dkt. Nos. 31, 32.  He then filed his objections on September 15, 2020, Dkt. No. 33 ("Pl. Obj."),

and Defendant filed a response on September 22, 2020, Dkt. No. 34 ("Def. Resp.").

This order assumes familiarity with the facts of this case, which are laid out in detail in

the R & R.  Unless otherwise noted, they are incorporated by reference herein.  Having reviewed

*de novo* the Administrative Record, the R & R, and the briefing on Plaintiff's Objections, the Court overrules Plaintiff's objections and adopts the R & R.[1]  The Commissioner's motion for judgment on the pleadings is GRANTED, and the Defendant's motion is DENIED.

## I.      Standard of Review

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When a party properly objects to the magistrate judge's proposed findings and recommendations, a district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  *Id.*

In order to merit *de novo* review, a party's objections must be specific rather than conclusory or general.  *See Watson v. Geithner*, No. 11-cv-9527 (AJN) (HBP), 2013 WL 5441748, at *2 (S.D.N.Y. Sept. 27, 2013) ("[A] district judge may review for clear error any portions of a magistrate's recommendations to which only 'conclusory or general' objections are made." (citing *Dixon v. McGinnis*, No. 06-cv-39 (RJS), 2012 WL 6621728, at *3 (S.D.N.Y. Dec. 19, 2012))).  The objections must, furthermore, have been raised before the magistrate judge, for "a party waives any arguments *not* presented to the magistrate judge."  *Id.* (citing *Tarafa v. Artus*, No. 10-cv-3870 (AJN) (HBP), 2013 WL 3789089, at *2 (S.D.N.Y. July 18, 2013)).  While courts in this District sometimes state that objections that "simply reiterate[ the] original arguments" merit only clear error review, *see, e.g., Argenti v. Saul*, No. 18-cv-9345 (AT) (BCM), 2020 WL 1503171, at *2 (S.D.N.Y. Mar. 30, 2020), this rule lacks support in either 28 U.S.C. § 636(b)(1)(C) or Rule 72(b)(2) of the Federal Rules of Civil Procedure.  The Second

---

[1] The Court has found no clear error in the portions of the R & R to which no objections have properly been made.

Circuit has expressed similar skepticism.  *See Moss v. Colvin*, 845 F.3d 516, 520 n.2 (2d Cir.

2017) ("[W]e are skeptical that clear error review would be appropriate in this instance, where

arguably 'the only way for [the plaintiff] to raise . . . arguments [on that point] [was] to reiterate

them.'" (citing *Watson*, 2013 WL 5441748, at *2)).

    In this case, Plaintiff timely makes several objections to the R & R.  For the reasons that

follow, the Court adopts the R & R in its entirety, overrules Plaintiff's objections, grants the

Commissioner's motion, and denies Plaintiff's motion.

### II.    Discussion

#### A.  Legal Standard

    When reviewing a decision of the Commissioner, a court may "enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . , with

or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The reviewing court "is

limited to determining whether the [Commissioner's] conclusions were supported by substantial

evidence in the record and were based on a correct legal standard."  *Selian v. Astrue*, 708 F.3d

409, 417 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)).  "When

there are gaps in the administrative record or the ALJ has applied an improper legal standard,"

remand to the Commissioner for further development of the evidence may be appropriate.  *Pratts

v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

#### B.  Analysis

    Plaintiff first objects to the R & R's reliance on the opinion of consultative examiner Dr.

Louis Tranese, arguing that this was in error because Dr. Tranese's assessment was based on a

one-time examination and because Dr. Tranese was not provided with plaintiff's longitudinal

medical history by the Commissioner.  *See* Pl. Obj. at 5–7; *see also* R & R at 27, 30, 32–33; Dkt.

No. 22 ("Pl. Br.") at 21–23; Def. Resp. at 3–5.  Relatedly, Plaintiff also objects that Judge Moses

did not appropriately evaluate the opinion of Dr. Gabriel Dassa.  *See* Pl. Obj. at 8–9; Pl. Br. at

19–23; *see also* Def. Resp. at 5–6.  And while not specifically styled as an objection to the R &

R, Plaintiff also proffers a third objection that the R & R erred in finding that the ALJ did not

violate the mandate of the Appeals Council.  *See* Pl. Obj. at 9–10; *see also* R & R at 39–41; Pl.

Br. at 23; Dkt. No. 29 ("Pl. Reply Br.") at 1; Def. Resp. at 6–7.[2]

As Judge Moses noted, the ALJ gave "significant weight" to some of Dr. Tranese's

examination findings, but rejected his conclusions as to Plaintiff's exertional capacity.  R & R at

33 (citing Dkt. No. 11 (Social Security Administration (SSA) Administrative Record)

(hereinafter "R. __") at 430).  And while the ALJ gave Dr. Dassa's conclusions regarding

Plaintiff's degree of disability "little weight," she accepted some of Dr. Dassa's views regarding

Plaintiff's exertional capacity.  R & R at 33 (citing R. 425, 430).  Neither doctor's opinion, that

is, was given controlling weight, and the ALJ's analysis carefully weighed the conflicting

opinion evidence.  *Id.*

---

[2] Plaintiff remarks in his objections that "Substantial Evidence Does Not Support A Residual Functional Capacity
for Sedentary Work," but he does not expound on any argument beyond those listed above.  *See* Pl. Obj. at 5.  To the
extent that Plaintiff intended to raise a separate argument as to substantial evidence, the objection would be too
"conclusory or general" to merit *de novo* review.  *See Watson*, 2013 WL 5441748, at *2.  In any event, the Court has
conducted a searching review of the record and concluded that there was substantial evidence to support the ALJ's
decision.  "[O]nce an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would have to
conclude otherwise."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original)
(quotation marks and citation omitted). And the substantial evidence standard is "a very deferential standard of
review – even more so than the 'clearly erroneous' standard."  *Id.* (citation omitted); *accord Brown v. Colvin*, 73 F.
Supp. 3d 193, 198 (S.D.N.Y. 2014).  Here, the Court concludes that there was substantial evidence in the record to
support the ALJ's findings and conclusions and agrees with the R & R's reasoning.

4

Plaintiff first argues that the ALJ "placed undue emphasis on the opinion of [Dr. Tranese][,] who examined Mr. Castorina just one time," and he cites Second Circuit case law that indicates that courts should be cognizant that one-time consultative examinations should be assessed cautiously.  Pl. Obj. at 33 (citing *Estrella v Barnhart*, 925 F.3d 90, 98 (2d Cir. 2019); *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)).  There is no *per se* rule, however, that an ALJ is barred from placing great or significant weight on a consulting physician's opinion.  *See*, *e.g.*, *Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) ("[I]t was not reversible error for the ALJ also to give great weight to [the consulting physician's] opinion.  [The consulting physician] personally examined the Plaintiff and reached conclusions consistent with the objective medical evidence.").  In context, the ALJ's assessment of Dr. Tranese's evaluation was not the kind of cursory analysis that courts have cautioned against.  In *Selian*, for instance, the Court emphasized that the ALJ "credited the findings of [the consulting physician] over [the treating physician's] views," and that "the ALJ made no effort to reconcile the contradiction or grapple with Dr. Corey's diagnosis."  *Selian*, 708 F.3d at 419; *see also Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) (describing the ruling in *Bluvband v. Heckler*, 730 F.2d 886, 894 (2d Cir. 1984), as providing that an "ALJ should not baldly accept consulting physicians' evaluations which are disputed and formulated after they had examined claimant only once.").

Here, though, the ALJ manifestly did not baldly accept Dr. Tranese's conclusions and evaluations.  To begin with, the ALJ's close assessment of Dr. Tranese's evaluation led her to reject his conclusions as to Plaintiff's exertional capacity.  R. 430.  Moreover, the ALJ explained her reasoning and cautiously weighed his findings on exertional capacity and rejected them in favor of Dr. Dassa's.  *Id.* at 425–30.  While this alone is not dispositive, it at least supports the

notion that her assessment was sufficiently probing as to identify the parts of Dr. Tranese's evaluations that she disagreed with.  Plaintiff argues that this is evidence that the ALJ erred, insofar as "the ALJ concluded that Dr. Tranese's opinion of Mr. Castorina's exertional capacities were not consistent with the remainder of the record," which he argues means "the ALJ was not also entitled to adopt Dr. Tranese's aberrant clinical findings as an accurate reflection of what the record established."  Pl. Obj. at 7.  But *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), the case on which Plaintiff relies, is readily distinguishable.  There, the ALJ concluded that the medical evidence established *severe* osteoarthritis, while the doctor on whose opinion the ALJ relied had diagnosed only a "mild" degenerative joint disease.  *Id.* at 123–24.  Here, by contrast, the dynamic went in the opposite direction: The ALJ rejected Dr. Tranese's conclusion that Plaintiff could perform heavy exertional work, but nonetheless concluded that Plaintiff could perform less intensive sedentary work.  *See* R & R at 27, 30, 32–33.  As 20 C.F.R. § 404.1567(d) acknowledges, however, the ability to perform heavy work—what Dr. Tranese concluded and the ALJ rejected—is consistent with the ability to perform sedentary work, which is less demanding.  *See* 20 C.F.R. § 404.1567(d) ("If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.").  In that regard, the tension that was present in *Curry* is absent here.  In addition, the ALJ did not improperly rely on Dr. Tranese's examination findings, as contemplated in *Selian*, because her analysis looked at Dr. Tranese's examination findings in the context of the other medical evidence presented to her, including the reports of Dr. David Hirsh and Dr. Neil Cobelli, which were consistent with Dr. Tranese's findings.  R. 320, 385, 402–03.  As in *Wright*, then, "it was not reversible error for the ALJ also to give great weight to" Dr. Tranese's opinion, because Dr. Tranese "personally examined the

6

Plaintiff and reached conclusions consistent with the objective medical evidence." *Wright*, 687

F. App'x at 48.

Plaintiff also argues that the ALJ erred in relying on Dr. Tranese's evaluation because Dr.

Tranese "did not consider Mr. Castorina's longitudinal medical history." Pl. Obj. at 6.

Specifically, he notes that Dr. Tranese did not review MRIs performed in February 2002, August

2003, 2005, March 2009, and April 2009, and argues that reliance on Dr. Tranese's opinions was

thus reversible error. *See* Pl. Obj. at 6–7. But there are two flaws in Plaintiff's argument. First,

as Judge Moses points out, the ALJ made clear that she was relying on his clinical findings that

followed an extensive physical examination and not his ultimate conclusions as to exertional

capacity. *See* R & R at 33 (citing R. 387–88). Second, the ALJ was entitled to rely on Dr.

Tranese's opinion because Dr. Tranese "personally examined the plaintiff and reached

conclusions consistent with the objective medical evidence." *Wright*, 687 F. App'x at 48; *see

also* R & R at 32–33; *Martinez v. Comm'r of Soc. Sec.*, No. 17-CV-8949 (HBP), 2019 WL

1254842, at *25 (S.D.N.Y. Mar. 19, 2019) (citing *Wright*); *Pealo v. Comm'r of Soc. Sec.*, No.

17-CV-0149 (GTS) (WBC), 2017 WL 5891772, at *4 (N.D.N.Y. Oct. 30, 2017), *report and

recommendation adopted*, No. 17-CV-0149 (GTS) (WBC) (N.D.N.Y. Nov. 28, 2017) (finding

that the ALJ's reliance on the opinion of a doctor who did not review of the entire record was not

reversible error); 20 C.F.R. § 404.1519n(c)(1)-(7) (listing the elements of a complete

consultative examination, none of which require that the consultative examiner review the entire

record). And the Court agrees with Judge Moses that Dr. Tranese's clinical findings were

consistent with the record evidence presented to the ALJ, including the reports of Dr. Hirsh and

Dr. Cobelli. *See* R & R at 32–35; R. 320–21, 385, 402–03. As a result, the Court agrees with

Judge Moses that there is no reversible error in the ALJ's reliance on Dr. Tranese's clinical findings.[3]

Turning to Plaintiff's second objection—that the ALJ did not appropriately evaluate the opinion of Dr. Gabriel Dassa—the Court agrees with Judge Moses's analysis that the ALJ did not commit legal error. As an initial matter, in his objections, Plaintiff does not expressly state that the ALJ's legal error consisted of improper application of the treating physician rule. *See* Pl. Obj. at 8–9. But in his original briefing, Plaintiff contended that the ALJ "failed to provide 'good reasons' for the weight assigned to Dr. Dassa's opinion," citing to the regulation that applies to the treating physician rule. Pl. Br. at 23 (citing 20 C.F.R. § 404.1527(c)(2)). As Judge Moses noted, however, "Dr. Dassa's 2007 and 2009 opinions were not entitled to controlling weight, because Dr. Dassa was not yet plaintiff's treating physician," rendering the treating physician rule inapposite. R & R at 33. The Second Circuit has explained that "[t]he opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient. . . . This was not the case with [the doctor], who only examined [Plaintiff] once or twice." *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983); *see also Vasquez v. Saul*, No. 16-CV-3610 (VSB) (DCF), 2019 WL 5682631, at *5 (S.D.N.Y. Nov. 1, 2019) ("[W]here a physician has seen a patient only 'once or twice,' his opinion 'should not be given the extra weight accorded a treating physician' because he does not have an ongoing relationship with the claimant sufficient to place him 'in a unique position to

---

[3] Here, too, Plaintiff relies on the argument that because the ALJ disagreed with Dr. Tranese's conclusions as to exertional capacity, she was not entitled to rely on his clinical findings. Pl. Obj. at 7. As already noted, however, Dr. Tranese's conclusions were not *inconsistent* with the ALJ's ultimate determination. *See* 20 C.F.R. § 404.1567(d).

make a complete and accurate diagnosis of his patient.'" (citing *Mongeur*, 722 F.2d at 1039 n.2); *Pena Lebron v. Comm'r of Soc. Sec.*, No. 18-CV-125 (BCM), 2019 WL 1429558, at *16 (S.D.N.Y. Mar. 29, 2019) ("A physician who has examined a claimant only once or twice is generally not afforded the weight due a treating physician.").  As a result, the specific requirements of the treating physician rule were inapplicable to Dr. Dassa's 2007 and 2009 opinions.  Moreover, though following his 2009 opinion, Dr. Dassa did see Plaintiff regularly from around September 2009 to December 2010, *see* R & R at 34, he did not undertake function-by-function analyses and instead articulated his conclusion that Plaintiff had a "total" disability. As Judge Moses correctly explained, however, that conclusion is "reserved to the Commissioner."  R & R at 34 (citing R. 430).  *See Johnson v. Comm'r of Soc. Sec.*, No. 17-CV-5598 (BCM), 2018 WL 3650162, at *16 (S.D.N.Y. July 31, 2018), *aff'd sub nom. Johnson v. Comm'r of Soc. Sec. Admin.*, 776 F. App'x 744 (2d Cir. 2019) ("[A] doctor's opinion that a claimant is 'disabled' . . . is not controlling."); 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

In addition, the ALJ compared Dr. Dassa's opinions to the rest of the evidence in the record, including the clinical findings of the other doctors, when determining how to weigh Dr. Dassa's opinion.  *See* R & R at 34–36 (discussing the specific contradictions).  Specifically, Dr. Dassa's clinical findings were more restrictive than those of the other doctors, including, notably, Dr. Cobelli's.  *Compare* R. 340, 363–64, 266–67, 400–01 *with* R. 320, 385, 402–03.  At other points, Dr. Dassa's clinical findings were contradicted both by the other doctors' findings *and* by

Plaintiff's own testimony. *See* R & R at 35–36; *compare* R. 341, 351, 356, 358, 361, 364, 367, 370, 398–99 *with* R. 25–26, 36, 47, 59–60, 81, 90, 320, 385, 461–62.  The ALJ's reasoning reflects a consideration of the factors that provided "good reasons" to assign Dr. Dassa's clinical findings and opinion that the ALJ did.  The ALJ considered the amount of medical evidence supporting Dr. Dassa's opinions and concluded that Dr. Dassa's opinions were inconsistent with his own clinical findings, *see* R. 430.  And she determined that Dr. Dassa's opinions contradicted the other medical evidence in the record, including existing clinical and laboratory evidence reported elsewhere and the clinical findings and opinions of the other doctors—not just Dr. Tranese's but also Dr. Cobelli's, Plaintiff's treating surgeon.  *See* R. 429–30.  While the Court agrees with Judge Moses that Dr. Dassa was not entitled to consideration as a treating physician, rendering the 20 C.F.R. § 404.1527(c)(2) factors inapposite, out of an abundance of caution it has also conducted its own searching review of the record and concluded that, though the ALJ's opinion did not expressly recite the factors, "the substance of the treating physician rule was not traversed." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); *cf. Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.").  Specifically, as already discussed, the ALJ's review meaningfully considered the "amount of medical evidence supporting [Dr. Dassa's] opinion[s]" and concluded that his opinions were contradicted by his own clinical findings, and it also looked at "the consistency of the opinion[s] with the remaining medical evidence" and concluded that his opinions contradicted laboratory and clinical evidence in the record as well as the opinions of the other doctors, including Dr. Cobelli, Plaintiff's treating surgeon.  *See* R. 429–30; *see also*

*Selian*, 708 F.3d at 418 (listing the factors).  And the ALJ's opinion also discussed the context underlying Dr. Dassa's 2009 opinion, including the nature of Dr. Dassa's diagnosis and the extent of the treatment.  *See* R. 429–30.  While the ALJ did not expressly indicate whether Dr. Dassa was a specialist, that does not override the otherwise-considerable evidence providing good reasons for the ALJ's decision of how to weigh Dr. Dassa's opinion.  In light of the fact that at the time Dr. Dassa provided his 2007 and 2009 opinions he was not yet Plaintiff's treating physician, and in light of the ALJ's careful analysis of all of the evidence in the record and provision of other "good reasons" to support her decision, the Court agrees with Judge Moses's reasoning and conclusion that the relative weight that the ALJ assigned to Dr. Dassa's findings did not constitute reversible error and does not compel remand.  *See* R & R at 37; *see also Estrella*, 925 F.3d at 98.

Finally, the Court agrees with Judge Moses that the ALJ did not violate the mandate of the Appeals Council.  *See* R & R at 39–41; *see also* Pl. Obj. at 9–10; Def. Resp. at 6–7.  Plaintiff contends that "[a]lthough explicitly directed to consider that the February and March 2011 MRIs of the right hip were relevant to the September 2011 date last insured [], the ALJ's December 2017 decision completely neglects to address the evidence of the right hip arthritis."  Pl. Obj. at 9 (citing R. 496).  As an initial matter, Plaintiff is correct that "[a]n 'ALJ's failure to comply with [an] Appeals Council's order constitutes legal error, and necessitates a remand.'"  *Zavadil v. Astrue*, No. 08-CV-4231 (DLI), 2010 WL 3924708, at *5 (E.D.N.Y. Sept. 29, 2010) (citation omitted); *see also* 20 C.F.R. § 404.977(b) ("The administrative law judge shall take any action that is ordered by the Appeals Council[.]").  But Plaintiff's objection misrepresents the record. The August 17, 2016 Appeals Council Order directed the ALJ to "[u]pdate the record (as

available) and proceed through the sequential evaluation process evaluating the claimant's abilities through the date last insured of September 30, *2010*." R. 496 (emphasis added). Plaintiff's objection, meanwhile, claims that the Appeals Council expressly directed to February and March 2011 MRIs that were "relevant to the September *2011* date last insured." Pl. Obj. at 9 (emphasis added). To be sure, the Appeals Council discussed the February 2011 and March 2011 MRIs and noted that "further evaluation of the claimant's bilateral hip impairments" was warranted in light of evidence that the date last insured was September 30, 2010. *See* R. 496–97. It asserted this in the context of finding that the prior hearing had erroneously concluded that Plaintiff's date last insured was on December 31, 2008, where evidence indicated that the date last insured was September 30, 2010. The Appeals Council, therefore, sought further evaluation in order to determine whether Plaintiff's bilateral hip condition was disabling prior to his date last insured. R. 496. The ALJ's subsequent analysis supported the ALJ's conclusion that it fell outside of the relevant period; in the 2017 hearing, the ALJ specifically asked about "both sides" of Plaintiff's hips, R. 459, and Plaintiff testified that he hurt his right hip "[a] year later [than his left hip surgery] while doing therapy for my left hip." R. 459–60. After evaluating the record, the Court agrees with Judge Moses that the ALJ did not violate the Appeals Council order. *See* R & R at 39–41. The ALJ evaluated relevant evidence, and partly based on Plaintiff's testimony, concluded that the right hip symptoms began after the date last insured. Furthermore, the ALJ complied with the only specific directive contained in the Appeals Council order, *see* R. 496.

III.    **Conclusion**

For the reasons stated above, the Court adopts the R & R,[4] GRANTS the Commissioner's

motion, and DENIES Plaintiff's motion.  This resolves Dkt. Nos. 21 and 25.  The Clerk of Court

is respectfully directed to enter judgment and to close the case.

SO ORDERED.

Dated: November 18, 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

[4] Because the Court adopts the R & R in its entirety, it denies as moot Plaintiff's request that the Court "vacate the March 27, 2013 Notice of Decision, and remand this action solely for calculation of disability benefits based on his September 15, 2004 application or, in the alternative, for additional administrative proceedings to be completed within 120 days of the Courts Order with an Award of benefits should SSA fail to comply with the time limits," Pl. Obj. at 10.